# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| **KINSEY, THOMAS JOSEPH** ) | Case No. 05-05278-TLM |
| ) | |
| Debtor. ) | **MEMORANDUM OF DECISION** |
| ) | |
| _____ ) | |

## INTRODUCTION

Thomas Kinsey ("Debtor") filed a voluntary bankruptcy petition on October 14, 2005. *See* Doc. No. 1. Debtor brought a motion, Doc. No. 9, seeking sanctions for violation of the automatic stay under 11 U.S.C. § 362(h)[1] against one of his creditors, Bonneville Billing & Collections, Inc. ("Bonneville") and its attorney, Robert Talboy.

The motion came on for hearing on November 14, 2005, and was taken under advisement upon submission of both parties' written closing arguments. The Court has reviewed those briefs, Doc. Nos. 15, 16, and the evidence presented at hearing. The following constitutes its findings of fact and conclusions of law as

---

[1] Debtor filed his petition immediately prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), and all citations herein are to the pre-BAPCPA Code, Title 11, U.S. Code.

MEMORANDUM OF DECISION - 1

required by Rule.

**BACKGROUND AND FACTS**

Debtor filed his chapter 7 petition and mailing matrix of his creditors on October 14, 2005. Bonneville was listed on Debtor's mailing matrix. The Bankruptcy Noticing Center ("BNC") mailed a general notice of bankruptcy to creditors, including Bonneville, on October 16, 2005. *See* Doc. No. 5.

Prior to October 14, 2005, Bonneville hired Shadow Trackers Investigative Services to serve Debtor and his ex-wife with a summons and complaint. Shadow Trackers successfully served Ms. Kinsey at home, but was initially unable to complete service upon Debtor at his work. Before they could attempt service again, Debtor filed bankruptcy.

On October 26, 2005, Bonneville noted in its records that Debtor had filed bankruptcy. It then contacted Shadow Tracker's president, Ronald Kern, informed him of Debtor's bankruptcy, and attempted to retrieve the summons and complaint. *See* Exs. 3 and 4.

Mr. Kern testified that, upon receiving notice of a bankruptcy, he would inform his secretary and she would either locate the court papers in an outgoing box and retrieve the paperwork so that service would not occur or, if the papers were not in the box, she would contact the process server immediately and inform the server not to proceed with service.

Mr. Kern followed Shadow Trackers' procedures in this case. Upon receiving notice from Bonneville, he informed his secretary that Debtor had filed bankruptcy. His secretary then searched for, but was unable to find, the papers Bonneville intended to have served on Debtor. In addition, she checked with the process server and confirmed he did not have the documents.

Despite these efforts, the summons and complaint were placed in Shadow Trackers' outgoing service box several days later and a process server picked them up. There was no clear explanation of how this occurred, only some speculation regarding how paperwork between Bonneville and Shadow Trackers may have crossed after the initial bankruptcy notification occurred.

On October 30, 2005, the process server successfully served Debtor at his place of employment, a building supply store. In order to serve Debtor, the process server requested Debtor by his full name at the "special services" desk at Debtor's workplace, but he did not identify himself or why he was there. Debtor told the individual working at the front desk it was most likely a personal matter and he did not want to deal with the situation at work. Pursuant to Debtor's wishes, the individual at the special services desk did not tell the process server where he could find Debtor.

Unable to locate Debtor through the front desk, the process server then visited two other departments, requesting Debtor by his full name. In the end, one

MEMORANDUM OF DECISION - 3

of Debtor's co-workers indicated that the process server was asking for him and was holding papers. The process server ultimately spoke with Debtor over the store's in-house phone, and Debtor accepted service.

Bonneville, as noted, did not intend for Debtor to be served. It did not take any further actions against Debtor in that state court lawsuit.

## DISCUSSION

### A. Automatic stay and sanctions for violations

As this Court has noted on numerous occasions, the automatic stay is one of the fundamental debtor protections under the Code, stopping all collection activities. *See In re Risner*, 317 B.R. 830, 834, 04.4 I.B.C.R. 172, 173 (Bankr. D. Idaho 2004). The protections of the automatic stay are enforceable through § 362(h).[2]

In order for a debtor to recover under § 362(h), he or she must prove that (1) an action occurred in violation of the stay, (2) the creditor was on notice of the bankruptcy and thus its actions were "willful"[3] and (3) debtor suffered damages as a consequence of creditors actions. *See In re Risner*, 317 B.R. at 835, 04.4

---

[2] Section 362(h) provides:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

[3] Once a debtor shows the creditor was on notice of the bankruptcy, "any [collection] actions intentionally taken thereafter are 'willful' within the contemplation of § 362(h)." *Risner*, 317 B.R. at 835, 04.4 I.B.C.R. at 173.

MEMORANDUM OF DECISION - 4

I.B.C.R. at 173; *In re Flack*, 239 B.R. 155, 162-63 (Bankr. S.D. Ohio 1999) (listing similar elements).

### 1. Was there a violation of the automatic stay?

The automatic stay arose on and was in effect from the date Debtor filed his petition, October 14, 2005. Bonneville's service of the state court summons and complaint through Shadow Trackers occurred on October 30, 2005. Bonneville's manager, Richard Fairbanks, acknowledged that Shadow Trackers was acting as Bonneville's agent in serving the summons and complaint on Debtor. Thus, Debtor has established that Bonneville violated the automatic stay. *See* § 362(a)(1).

### 2. Was there a willful violation of the automatic stay?

Once a creditor or actor is put on notice of a bankruptcy filing, any actions intentionally taken thereafter are "willful" within the contemplation of § 362(h). *Eskanos & Adler P.C. v. Leetien,* 309 F.3d 1210, 1215 (9th Cir. 2002). The question is not whether the creditor intended to violate the stay, but whether the creditor intended the act. *Id.* at 1215; *Associated Credit Servs. Inc. v. Campion (In re Campion),* 294 B.R. 313, 316 (9th Cir. BAP 2003).

Here, Bonneville documented its receipt of the bankruptcy notice on October 26, 2005. *See* Ex. 4. When its process server served Debtor on October 30, 2005, four days after Bonneville received notice of Debtor's bankruptcy filing,

MEMORANDUM OF DECISION - 5

Bonneville willfully violated the automatic stay.

The fact that Bonneville did not intend to violate the stay is irrelevant. Further the fact that Bonneville had instituted a policy to avoid violating bankruptcy stays is also irrelevant because Bonneville's procedures were not effective in this case. *See Campion*, 294 B.R. at 317-18 (noting that the "only solace for the creditor who winds up willfully violating the automatic stay without meaning to is that a good heart may figure in the assessment of § 362(h) damages"); *Risner*, 317 B.R. at 836 n.7, 04.4 I.B.C.R. at 173 n.7 (discussing the fact that having a procedure in place to deal with bankruptcy filings does not innoculate a creditor from sanctions if that procedure fails and the creditor violates the automatic stay, even inadvertently). While not egregious conduct, Bonneville's admitted mistake constitutes a willful violation of the automatic stay, and Bonneville would be liable for any damages proven at hearing.[4]

### 3. Was Debtor damaged by Bonneville's stay violation?

Debtor must prove actual damages to recover under § 362(h). *See generally*, *In re Jacobson*, 03.2 I.B.C.R. 119, 121 (Bankr. D. Idaho 2003). Not

---

[4] As noted, Debtor brought his motion not just against Bonneville but also against its attorney, Robert Talboy. Debtor's motion alleges that Bonneville, through Mr. Talboy, had the summons and complaint served on Debtor at his place of employment. However, at hearing, Debtor did not establish that Mr. Talboy was involved in the service of the summons and complaint on Debtor. Instead, the evidence proved that Mr. Talboy was the attorney who initiated the state court proceeding pre-bankruptcy, but that Bonneville initiated and controlled service of the summons and complaint through its process server, Shadow Trackers. Debtor failed to prove Mr. Talboy violated the automatic stay.

MEMORANDUM OF DECISION - 6

only does § 362(h) clearly require such proof, this Court has instructed Debtor's counsel, on numerous occasions, that such proof is required. *See*, *e.g.*, *Risner*, 317 B.R. at 836-37, 04.4 I.B.C.R. at 174; *In re Masi*, No. 05-00412, Doc. No. 55 at 12 (Bankr. D. Idaho May 24, 2005); *In re McCain*, No. 03-04624, Doc. No. 42 at 9 (Bankr. D. Idaho Aug. 19, 2004) ("[T]he Court declines to award Debtors damages because the record is insufficient to prove they suffered any actual damages, nor is there any competent proof regarding their claims for recovery of attorney fees and costs."). Indeed, Debtor's motion appears to recognize this requirement. *See* Doc. No. 9 at 3 ("Kinsey requests the opportunity to present argument, testimony and evidence, for an award of actual damages, punitive damages, and reasonable attorney fees for the prosecution of this action.").

Debtor's affidavit in support of his motion states that "he was greatly humiliated and embarrassed by being served a lawsuit at [his] place of employment," and that "such humiliation and embarrassment . . . caused . . . great hardship, mental anguish and distress." *See* Doc. No. 10 at 2. In addition, Debtor's post-hearing brief argues that Bonneville's willful stay violation caused "great humiliation and embarrassment to Kinsey by serving him at his place of employment witnessed by co-workers, management and customers resulting in a hardship at his place of employment, mental anguish and distress." Doc. No. 16 at 3.

MEMORANDUM OF DECISION - 7

Emotional distress damages are available to a debtor under § 362(h). *See Dawson v. Washington Mutual Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1149 (9th Cir. 2004). However, Debtor is required to prove that he suffered significant harm and clearly establish that harm. *Id.* In addition, Debtor must demonstrate that a causal connection exists between that significant harm and the violation of the automatic stay. *Id.* And while "pecuniary loss is not required in order to claim emotional distress damages, not every willful violation merits compensation for emotional distress." *Id.*

In this case, there was no evidence presented at hearing supporting or even addressing Debtor's conclusory allegations of emotional harm found in his affidavit. And, while Debtor's affidavit and brief can be cited by the Court in this Decision for context, they do not constitute competent evidence. As the element of damages was clearly disputed by Bonneville, the testimony of witnesses and introduction of admissible exhibits was required. *See* Fed. R. Bankr. P. 9014(d) ("Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding."); *see also Khachikyan v. Hahn (In re Khachikyan)*, No. 04-1589, 2005 WL 3116003 (9th Cir. BAP November 2, 2005) (noting that "trial on a contested matter under Rule 9014, by virtue of a 2002 amendment to that rule, ordinarily requires trial testimony in open court with respect to disputed material factual issues in the same

MEMORANDUM OF DECISION - 8

manner as an adversary proceeding").

The Court can presume being served with a lawsuit at one's place of employment is embarrassing, but "[f]leeting or trivial anxiety or distress does not suffice to support an award; instead, an individual must suffer significant emotional harm." *Dawson*, 390 F.3d at 1149.  As no significant emotional harm was established in this case, emotional distress cannot serve as the basis to award damages.

Despite knowing of the requirement that actual damages be proven, Debtor's counsel has presented no competent proof of actual damages, and the Court cannot grant relief under § 362(h).[5]

**CONCLUSION**

For the foregoing reasons, the Court cannot grant relief under § 362(h) for Bonneville's willful violation of the automatic stay.  Debtor's motion for sanctions, Doc. No. 9, will be denied.

Counsel for Bonneville and Mr. Talboy shall prepare a form of order.

---

[5] Debtor also requests punitive damages.  Since he failed to prove any actual damages, punitive damages are not available to him.  *See McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168 (9th Cir. BAP 1995) (holding that "no punitive damages should be awarded in the absence of actual damages").  In addition, even had Debtor established actual damages, he failed to justify punitive damages or substantiate his assertion that Bonneville's actions were "malicious, wanton or oppressive" or that its actions demonstrated a "reckless or callous disregard for the law."  *See* Doc. No. 9 at 3.  Quite the opposite, it appears Bonneville took efforts to halt service of process upon receiving actual notice of Debtor's bankruptcy, but unfortunately a mistake occurred and Debtor was inadvertently served.

MEMORANDUM OF DECISION - 9

DATED: January 10, 2006



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 10